## HALL v. IRWIN.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

**1.** LEASE OF OFFICE—WHAT INCLUDED IN—APPURTENANCES.

    The use of closets contiguous to rooms rented in an office building, and of the wash-basins therein, and of the elevators, hallways, stairs, and entrances of the building, is included in the lease, though not specially mentioned, and the right to use them passes to the tenant.

**2.** SAME—REPAIRS—EVICTION—QUESTION FOR JURY.

    Where during the occupancy by a tenant of rooms on an upper floor of an office building access to the building and elevator and stairs was so interfered with, by alterations and repairs made by the landlord, that a dangerous condition existed, and the closet and wash-basin were removed, and the closet on the floor below was unsanitary, the question whether the tenant's substantial enjoyment of the premises was so affected as to constitute an eviction was for the jury.

**3.** SAME—LEASE—ORAL MODIFICATION—CONFLICT OF EVIDENCE.

    Where, at the time of renewal of a lease for offices in a building, certain changes and repairs were in progress, and because thereof an oral agreement was made for a reduction of the rent to a certain time, and there was a conflict in testimony as to whether or not such agreement included a contract that the repairs should be completed at such time, the question as to the terms of such oral agreement was for the jury.

**4.** SAME—REPAIRS—REDUCTION OF RENT—ESTOPPEL.

    By the acceptance of the reduction of rent during the time specified the tenant is not estopped from claiming that the continuance of the work beyond such time effected an eviction, if the agreement under which the reduction was made provided that the work should then be completed.

**5.** SAME—LEASE—CONDITION AGAINST LATENT DEFECTS.

    A provision, in a lease of offices in a building, that "no latent defects or change of condition" should give rise to any claim against the landlord,

has no bearing on a claim by the tenant that he is evicted from a part
of the premises by the positive acts of the landlord in making changes
and repairs to the building.

3. ERROR IN CHARGE—EXCEPTION—NECESSITY.

Error cannot be based on a portion of a charge to which no exception
was taken.

Appeal from appellate term.

Summary proceedings to dispossess a tenant by Charles W. Hall
against George C. Irwin. From an order of the appellate term re-
versing the judgment of the municipal court in favor of defendant
(77 N. Y. Supp. 91), he appeals. Reversed.

This proceeding was begun in the municipal court to dispossess a tenant
from rooms in the office building 140 Nassau street, and tried before a jury.
The petition avers that the tenant entered into an agreement with the landlord
to rent four rooms on the seventh floor of the building at a rental of $1,000
a year from May 1, 1901, payable monthly in advance, and went into posses-
sion and still occupies the same; that on January 1st there was due the land-
lord for rent the sum of $500, for which the tenant defaulted in payment,
and, without permission, holds over and continues in the possession of the
premises; wherefore the landlord prays for a final order removing said
tenant. It was conceded upon the trial that the rent under the lease from
August 1st to February 1st, amounting to $500, was unpaid, but the tenant
contended that during the time, owing to repairs and alterations made in the
building in the entrance, hallways, stairs, elevators, floors, and lavatories,
he was, as to them, put out of possession, and thus evicted from a material
part of the premises, and therefore the rent during such period was not paya-
ble, and hence the dispossess proceeding could not be maintained. A great
deal of testimony was given upon the extent of the repairs which were
made, and the time during which the inconvenience resulting therefrom con-
tinued, and it appears that the elevators were altered and the service lessened,
one being removed entirely from use; that the floors of the hall were removed,
and new tiling laid; the stairs removed, and temporary ones used until the
new stairs were completed; the entire front entrance removed, and a new en-
trance built; the water-closets on the tenant's floor taken out, and also the
wash-basins therein, and the closets not replaced till January, although a part
of the time a ladies' closet was there, and there was a closet on the floor
below, which, it was testified, was used by workmen, and was in an unsani-
tary condition. During this time the halls were littered with barrels and
dirt, and the entrance was by temporary and almost unprotected steps, and
visitors were put to great inconvenience in getting in and out of the building;
and some of the repairs extended down to the latter part of January. It was
testified that the alterations were contemplated and begun prior to the end
of the old lease, April 30, 1901, and that the tenant urged that he be granted
a reduction of the rent, and a reduction was made for six months of one-
half the amount, to apply to the three months preceding and following the
making of the new lease, May 1, 1901; and it was then stated by the land-
lord that he expected to complete the alterations by August 1, 1901, to which
time the rent was reduced. There is some dispute as to just what the oral
agreement thus made was, the landlord contending that the reduction was
made in consideration of the alterations contemplated whenever they should
be completed, it being said that it was expected that the work would all be
done by August 1st. The tenant contends that the agreement was that the
rent should be reduced to one-half up to and including August 1st, upon the
condition that the alterations were all completed at that time, and that as
they were not so completed, he is entitled to a further reduction. In support
of this contention it is pointed out that the one who made the agreement be-
tween the landlord and tenant testified that he told the latter he expected the
alterations to be completed by August 1st, and it "was in consideration of that
that three months' rent was allowed" from the making of the lease. The
municipal court submitted the issues to the jury, and a verdict was returned

in favor of the tenant, and from the judgment so entered the landlord appealed to the appellate term. That court held that the facts did not warrant the jury in finding that there was an actual eviction of the tenant by the landlord from any substantial portion of the premises; that the water-closets and basins were not an integral part of the rooms leased, the deprivation of the wash-basin being temporary, and the closets on the floor below being available to the tenant; and that the inconvenience of the alterations was not such as amounted to eviction, and the tenant had been informed, when the lease was made, of the proposed alterations, and been allowed a deduction therefor. In a concurring opinion it was pointed out that the lease itself provides that the lessor shall not be responsible for any "latent defects or change of condition," nor other damage to the premises, nor for overflow of water, etc. The judgment of the municipal court entered on the jury's verdict was therefore reversed, and a new trial ordered, and from the order so entered, the tenant brings this appeal.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Henry Schmitt, for appellant.
Lemuel Skidmore, for respondent.

O'BRIEN, J.   It is for us to determine upon the evidence whether the judge of the municipal court was right in submitting the questions as ones of fact to the jury, or whether the appellate term was right in determining them as matters of law. The use of closets contiguous to the rooms rented, and of the wash-basins therein, of the elevators and hallways, stairs and entrance of the building, was included, though not mentioned in the lease, and the right to use them passed to the tenant. As said in Doyle v. Lord, 64 N. Y. 437, 21 Am. Rep. 629:

"The general rule of law is that, where a house or store is conveyed by the owner thereof, everything then belonging to and in use for the house or store as an incident or appurtenance passes by the grant."

And in Wood, Landl. & Ten. § 47, it is said:

"If a person takes a lodging on the first and second floors of a house, he has a right to the use of the door, bell, knocker, skylight, of the staircase, and the water-closet, and every convenience connected with the building essential to the comfortable enjoyment of the leased portion, unless it be otherwise stipulated."

And in Hamilton v. Graybill, 19 Misc. Rep. 521, 43 N. Y. Supp. 1079, it was said that the fact of the existence of the water-closet on a floor "may have been materially persuasive upon the respondent when he accepted the lease of the rooms, and which, because not expressly included, passed with the demise, although not particularly alluded to." McAdam on Landlord and Tenant says (volume 1, p. 269):

"The term 'appurtenances' received a broad and liberal meaning by the court of appeals in Doyle v. Lord, 64 N. Y. 437, 21 Am. Rep. 629. The court said: 'That word would give him whatever was attached to or used with the premises as incident thereto, and convenient or essential to the beneficial use or enjoyment thereof.'"

There seems to be no necessity for arguing this general proposition, it being conceded that a tenant is entitled to have access through the door, halls, stairs, floors, and elevators, and the use of the wash-

basins and closet, in order to enjoy the rooms he occupies, and these elements are factors in determining the sum to be paid as rent under the lease. If the tenant, deprived of such appurtenances, had moved out pending the repairs, and had then been sued for the rent, could it be held as matter of law that he was liable therefor? The answer would depend on whether or not these appurtenances were a material and integral part of the demised premises, and whether the loss or deprivation to the tenant was substantial for a sufficiently long period of time so as to constitute an eviction. If immaterial and temporary, the tenant could not retain possession and refuse to pay the rent.

Upon the evidence we think that conflicting views might be taken as to whether the alterations were so material and substantial in character as to amount to an eviction, or whether they were of such an immaterial and temporary kind as not to affect injuriously the enjoyment of the demised premises. Unless the former conclusion had no basis for support in the evidence, there was properly a question for the jury. Hamilton v. Graybill, supra; Simmons v. Cloonan, 81 N. Y. 557. It was testified that during the period access to the building and elevator and stairs was so interfered with that dangerous conditions existed down to the latter part of January; that the closet and wash-basins were removed during the time, and not replaced till the latter part of January; and that the closet on the floor below was unsanitary, owing to the use by the workmen. The extent of the repairs, the time consumed in making them, how far they affected in a substantial way the tenant's enjoyment of the premises, were all elements to be considered by the jury upon the question of fact presented as to whether or not the defendant's acts constituted an eviction. The evidence bearing upon this subject, we think, supports the jury's verdict that they did, and in this conclusion we differ from the learned appellate term, which held as matter of law that they did not.

We also differ from the conclusion of the appellate term on the other branch of the case,—that the acceptance of a reduction in the rent estopped the tenant. The agreement of reduction, made when the lease was entered into, rested in parol, and there was a serious conflict as to its terms. We have the two versions, one by the landlord, the other by the tenant, and thus a question of fact was involved which it was the province of the jury to determine. Nor do we think that the provision in the lease that "no latent defect or change of condition" should give rise to any claim against the landlord has any material bearing on the questions discussed, because the complaint of the tenant did not relate to latent defects. To extend this provision of the lease, therefore, so as to cover damage flowing directly from the positive acts of the landlord, would leave the tenant without any protection under his lease. There being, then, a basis for the finding by the jury that the alterations and deprivations did materially interfere with the enjoyment of the premises and the appurtenances given by the lease, it follows that the tenant was by the act of the landlord evicted from a part of the leased premises. As said in Peck v. Hiler, 24 Barb. 178:

"An interruption of the enjoyment of the privilege conferred by a lease by physical means adopted by the landlord constitutes an eviction, and suspends the rent of the * * * premises, and the remedy of the lessor for the recovery of the possession."

And in Sirey v. Braems, 65 App. Div. 472, 72 N. Y. Supp. 1044, it was held (headnote) that:

"The eviction of a tenant from a portion of the demised premises suspends during the continuance of the eviction the right of the landlord to maintain summary proceedings against the tenant for the nonpayment of the rent."

We have not overlooked the contention that the court erred in its charge to the jury. To that portion, however, which is particularly objected to, no exception was taken, and upon an examination we think the charge was in all respects fair and proper.

Our conclusion, therefore, is that the determination of the appellate term should be reversed, with costs, and the judgment entered on the verdict of the jury in the municipal court affirmed, with costs. All concur.