27688. JOHNS *v.* GIBSON.

DECIDED SEPTEMBER 11, 1939.

*Curry & Curry,* for plaintiff.  *Bussey & Fulcher,* for defendant.

SUTTON, J. F. I. Gibson filed suit against J. D. Johns, alleging that on May 20, 1936, he leased from the defendant by written agreement certain premises for a term beginning July 1, 1936, and ending July 1, 1937, under which agreement the defendant was to make certain repairs and especially to repair the awnings on the house, install a screen door, and maintain the house in tenantable condition. (A copy of the lease agreement attached to the petition shows that the defendant agreed "to calcimine or paint the kitchen walls, repair screening on back porch and boarding, touch up walls at the stairway, and paint side walls in bathroom, repair awnings and install screen door.") The petition further alleged, that the plaintiff repeatedly demanded of the defendant that he comply with the terms of the lease agreement by making repairs and remedying a leaky roof, all of which demands the defendant ignored and refused to comply with; that finally, in an effort to have the defendant comply with the terms of the lease, the plaintiff withheld payment of rent, and on March 20, 1937, the defendant sued out to the April term, 1937, of the municipal court of Augusta a distress warrant for $126; on March 25, 1937, that the plaintiff paid into the registry of the court the sum of $126 as rent and $8.50 as court costs, and on March 31, 1937, through his attorneys, he notified the defendant that unless repairs were made by him by April 5, 1937, such repairs would be made by the plaintiff and offset against the rent; that nevertheless the defendant, through his agent, J. Milo Hatch, sued out a dispossessory warrant against the plaintiff, and it became necessary for the plaintiff to employ counsel, procure a surety, and file bond and counter-affidavit; that when said case came on for trial it was dismissed; that on May 14, 1937, the defendant sued out to the May term, 1937, of the municipal court of Augusta a distress warrant, seeking to collect from the plaintiff $84 (for April and May rent), and it became necessary for the plaintiff to employ counsel, procure a surety, and file bond and counter-affidavit, in which a tender of $20.77 was made to the defendant, a sum sufficient to cover the rent sued for, less expense of $28.38 for installing awnings, $25 cost of screen door, and $9.85 cost of flower boxes removed by defendant, "as provided in said lease and as plaintiff notified defendant he expected to do unless said provisions of the lease were complied with by the defendant;" that a tender of the balance of the April rent

was made on April 27, 1937, and a tender of the balance of May rent was made on May 12, 1937, both tenders having been made before the institution of the said suit on May 14, 1937; that on June 9, 1937, the defendant sued out a distress warrant in the municipal court of Augusta, seeking to collect $42 as rent for June, and it became necessary for plaintiff to employ counsel, procure a surety, and file bond and counter-affidavit; that in the counter-affidavit a tender of $2 was made by plaintiff, a sum sufficient to cover rent for June, 1937, less the amount which the premises had been reduced in value as a tenantable building because of the failure of the defendant to make the repairs called for by the lease; that said tender of $2 had previously been made on June 1, 1937, before the institution of the suit on June 9, 1937; that the distress warrants issued on May 14, 1937, and June 9, 1937, came on for trial and were consolidated, and on July 13, 1937, a jury returned a verdict in favor of the plaintiff in the damage suit; that in suing out said distress warrants and dispossessory warrant, which resulted in the subsequent litigation, the defendant was acting maliciously and without probable cause after full notice had been received by him of the rights of plaintiff and appropriate tenders made to him of the amounts in which the plaintiff was indebted to him, and said warrants were procured in order to annoy, harass, and embarrass the plaintiff; that as a result of the action on the part of the defendant the plaintiff had incurred court costs of $8.50, bond premiums of $15, and attorney's fees of $50, and, in addition, the plaintiff's reputation, good standing, and credit in the community had been damaged in the sum of $2500, for all of which judgment was prayed. The defendant filed general and special demurrers. The plaintiff, in response to the special demurrers, amended the petition by attaching copies of all of the pleadings in connection with the warrants. The defendant renewed his general demurrer to the petition as amended, and the exception here is to a judgment overruling the demurrer.

The present action purports to be one for malicious use of civil process, to recover in which it must be shown that the defendant instituted the suit complained of maliciously and without probable cause, and that it terminated in favor of the plaintiff herein. Want of probable cause exists when the circumstances are such as to satisfy a reasonable man that the one bringing the suit had no

ground for proceeding but his desire to injure the defendant. Code, § 105-802; *Haverty Furniture Co.* v. *Thompson*, 46 *Ga. App.* 739, 741 (169 S. E. 213). Ordinarily the question of the existence of probable cause is for determination by the jury. *Thornton* v. *Story*, 24 *Ga. App.* 503 (3) (101 S. E. 309) ; *Ventress* v. *Rosser*, 73 *Ga.* 534. But where the material facts are not in dispute, or only one reasonable inference can be drawn from the evidence, the court shall determine whether or not probable cause exists. *Woodruff* v. *Doss*, 20 *Ga. App.* 639 (93 S. E. 316) ; *Sirmans* v. *Peterson*, 42 *Ga. App.* 707, 709 (157 S. E. 341). The element of malice may not be express, but may be inferred from a total want of probable cause. Code, § 105-804; *Hicks* v. *Brantley*, 102 *Ga.* 264 (29 S. E. 459) ; *Mumford* v. *Sears*, 44 *Ga. App.* 623 (4) (162 S. E. 661), and cit. "It is not sufficient for the pleader to merely set forth his conclusions in the language of the statute, but such facts must be averred and shown as will enable the court to say that, upon the proof of such facts, the jury would be authorized to find that the former suit was instituted maliciously and without probable cause, or that from such lack of probable cause they would be authorized to infer malice." *Hallman* v. *Ozburn*, 38 *Ga. App.* 514, 515 (144 S. E. 344) ; *Wilcoxan* v. *Equitable Loan Co.*, 48 *Ga. App.* 250, 251 (172 S. E. 682). "In such a proceeding, while it is necessary that it shall appear that the previous litigation has finally terminated against the plaintiff therein, this fact, while generally sufficient to indicate where the preponderance of the evidence lies, furnishes no proof or presumption that the former proceeding was instituted maliciously or without probable cause (*Farrar Lumber Co.* v. *Hogan*, 25 *Ga. App.* 597, 103 S. E. 863) ; and this is the gist of the action. It is not the policy of the law to give rise to a cause of action based on the malicious use of legal process merely because the plaintiff loses his case; if this were the rule, 'the end of the action would be merely the beginning of litigation.' *Porter* v. *Johnson*, 96 *Ga.* 145, 148 (23 S. E. 123)." *Hallman* v. *Ozburn*, supra.

Applying the above-stated principles to the allegations of the petition, it can not be said that a cause of action was set forth. It is alleged that the suit prosecuted by the landlord terminated in favor of the plaintiff tenant, and that "in suing out said distress warrants and dispossessory warrant, which resulted in the subse-

quent litigation, the defendant was acting maliciously and without probable cause after full notice had been received by him of the rights of plaintiff and appropriate tenders made to him of the amounts in which the plaintiff was indebted to him, and said warrants were procured in order to annoy, harass, and embarrass the plaintiff." If the allegations showed a total want of probable cause, malice could be inferred therefrom; but does the petition show a total want of probable cause? We think not. It appears from an exhibit attached to the petition that, after settling the distress warrant for January, February, and March rent, the plaintiff herein notified the defendant on March 31, 1937, that unless repairs to awnings and leaky roof were made and front screen door installed by April 5, 1937, the tenant would proceed to have the work done and offset the cost against rent. The landlord replied, on April 1, 1937, that "all contracts with Mr. Gibson have been complied with as per agreement with him, including repairing roof and all other necessary repairs; and I refuse to grant permission to Mr. Gibson to do any further repairs or modifications on the house." A copy of this letter is attached to the petition as an exhibit. It is thus shown that there was a disagreement between the parties as to the right of the tenant to have certain repairs made. If the landlord was under obligation to make the repairs insisted on, and did not do so, the tenant had the right, upon the refusal of the landlord to perform, to cause the repairs to be made by another and offset the reasonable charges against the rent. But the landlord was not precluded from questioning the amount of the expense incurred, even if it be said that he had not complied with his contract to repair; and if he and the tenant could not amicably agree as to a proper reduction because of such repairs, the landlord had the right to bring the actions complained of, and let the jury, upon the setting up of such items of expense by the tenant in his counter-affidavit, determine the proper amount of the unliquidated claim of the tenant. It does not follow that the landlord acted without probable cause merely because the summary proceedings terminated in favor of the tenant. *Hallman* v. *Ozburn,* supra. Nor is the allegation that the landlord acted maliciously good against the general demurrer where no facts are alleged which support such charge, and likewise the allegation that the warrants were procured in order to annoy, harass, and em-

barrass the plaintiff are merely conclusions of law. Moreover, where there is probable cause for instituting the suit, it is immaterial that the one bringing the suit acted maliciously. From what is said it follows that the court erred in overruling the general demurrer.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*