## C-531

## William M. Shanahan and Ellen C. Shanahan v. Margarethe Collins

(539 P.2d 1261)

Decided July 21, 1975.

Clark, Martin and Pringle, Bruce D. Pringle, for petitioners.

Vranesic, Right and Linn, G. F. Linn, for respondent.

Legal Aid Society of Metropolitan Denver, amicus curiae, Michael L. Gilbert, for amicus curiae.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

In this proceeding certiorari was granted to review the decision of the Court of Appeals in *Collins v. Shanahan,* 34 Colo. App. 82, 523 P.2d 999.

On February 4, 1972, Margarethe Collins, the plaintiff in the trial court and respondent here, filed a complaint for unlawful detainer and damages. William M. Shanahan and Ellen C. Shanahan, the defendants in the trial court and petitioners here, answered denying that they were unlawfully in possession of the premises and also denied that plaintiff was entitled to damages. The parties will be referred to by their respective trial court designations.

As to the issue before us, the facts giving rise to this action are not in serious dispute. Originally, the defendants were the owners of the Penn VII Apartment House. The defendants resided in the penthouse of this apartment house and the defendant, Dr. Shanahan, maintained his office for the practice of psychiatry in these premises as well. After negotiations involving the defendants' retention of a tenancy to the penthouse, the plaintiff purchased the Penn VII Apartment House in August, 1968. As partial consideration for the sale of the building, two weeks prior to consummation of the sale transaction, the parties entered into a rental agreement whereby the defendants retained a life estate in the penthouse. One covenant of the lease stated that the "[l]andlord and tenant hereby agree that landlord will cause the subject premises to be painted once every three (3) years."

On October 9, 1971, the respondent notified the petitioners that their tenancy would be terminated as of November 1, 1971. The petitioners did not vacate and in November 1971, made a demand upon the respondent that the penthouse be repainted according to the covenant to repaint. The respondent refused to repaint the premises thereby prompting the petitioners to contract on their own to have the penthouse painted at a cost of $1,808. The petitioners withheld rent for January, February, March and part of April for the purported purpose of setting off the expense incurred in having the penthouse repainted against the rent.

Two basic questions have been present since the outset of this action. First, whether the defendants possessed a life estate in the premises in question. Second, whether the defendants' failure to pay rent constituted a forfeiture, thereby entitling the plaintiff to possession of the premises. The trial court, relying on *Edmundson v. Preville,* 12 Colo. App. 73, 54 P. 394 (1898), answered the first question in the negative and concluded that the tenancy was month to month. As to the second issue, the trial court concluded that by withholding rental payments for the ostensible purpose of covering the expense of repainting the premises, the defendants were in default which resulted in a forfeiture. The court entered judgment for the plaintiff for possession, for $1,833, the amount of rent withheld, and for attorney fees in the sum of $750.

The Court of Appeals affirmed the judgment of the trial court "with regard to the granting of possession and rents due to plaintiff" and re-

versed as to the award of attorney fees. In so deciding, the Court of Appeals concluded that the defendants were holders of a tenancy for life, but that the defendants' covenant to pay rent was independent of the plaintiff's covenant to repaint. From the latter conclusion followed the result that the defendants' obligation to pay rent continued despite the plaintiff's refusal to perform her covenant.

■ We agree with the conclusion of the Court of Appeals regarding the nature of the tenancy in issue and approve that portion of their opinion pertaining thereto. However, we disagree with the approach employed and the conclusion reached with respect to the issue evolving from the defendants' default in rental payments. Therefore, we reverse the judgment.

As were the courts below, we are concerned herein with the issue of whether the defendants' failure to pay rent in the form of a monthly monetary payment constituted a forfeiture of the tenancy. However, in this case we chose not to resort to the concept of covenant independency which governed the lower courts but to resolve the issue of termination by the application of the law of contracts which comports with precedent. *C.f. Ruston v. Centennial Real Estate Investment Co.*, 166 Colo. 377, 445 P.2d 64 (1968); *Leach, Sr. v. La Guardia*, 163 Colo. 225, 429 P.2d 623 (1967); *Denver Plastics v. Snyder*, 160 Colo. 232, 416 P.2d 370 (1966); *Fern v. Crandell*, 79 Colo. 403, 246 P. 270 (1926); *see also* 1 *American Law of Property*, (Casner ed. 1952) 3.11 p.202).

At common law the real estate lease developed in the field of real property rather than contract law. *Green v. Superior Ct. of City and County of San Francisco*, 10 Cal. 3d 616, 517 P.2d 1168, 111 Cal. Rptr. 704 (1974) and cases cited therein. Under this concept a lease was considered to be a conveyance of an interest in real estate. Thus, the duties and obligations of the parties, implied as well as express, were dealt with according to the law of property rather than the law of contracts. *Marini v. Ireland*, 56 N.J. 130, 265 A.2d 526 (1970). This led to the conclusion that the covenants of the respective parties were independent. We do not consider this to be the proper approach to the problem presented here.

■ In the numerous jurisdictions which have considered the problem before this court today, it has long been the general rule that a tenant may set off against the rent the costs and expenses incurred in performing the landlord's covenant to make improvements or repair. *e.g. McAlester v. Landers*, 70 Cal. 79, 11 P. 505 (1886); *Johns v. Gibson*, 60 Ga. App. 585, 4 S.E. 2d 480 (1939); *Miller v. Sullivan*, 77 Kan. 252, 94 P. 266 (1908); *Hendry v. Squire*, 126 Ind. 19, 25 N.E. 830 (1890); *Loy v. Sparks*, 304 Ill. App. 35, 25 N.E. 2d 893 (1940); *Caves v. Bartek*, 85 Neb. 511, 123 N.W. 1031 (1909); *Beardsley v. Morrison*, 18 Utah 478, 56 P. 303 (1897); *Ingalls v. Beall*, 68 Wash. 247, 122 P. 1063 (1912); *Cheuvront v. Bee*, 44 W. Va. 103, 28 S.E. 751 (1897). We consider the following language from *Beardsley v. Morrison, supra*, to be particularly relevant to the case at hand:

"Under the terms of the lease, the lessor was bound to build or complete the addition to the hotel, upon receiving 30 days' written notice to do so from the lessee. Such notice was given, but neither the lessor nor the assignee performed this part of the contract by finishing the addition. This failure to do so gave the lessee the right to make the addition tenantable in accordance with the terms of the lease, and offset the expense against the rent. * * * The making of the improvements having been refused by the landlord after notice from the tenant, the purchase of the lumber, and placing the same upon the premises with the intention on the part of the tenant to make the improvements as provided in the contract, constituted a sufficient payment of the rent for the month of May, 1894, to prevent a forefeiture of the lease, the lumber amounting in value to the rent; and therefore the tenant was not in default. . . . Where a lease of premises contains a covenant binding the lessor to make certain improvements and repairs, and the lessor refuses to make such improvements and repairs, after notice from the lessee to do so, the lessee may make the same in accordance with the covenant, and charge the reasonable value thereof against the rent."

The rationale of these cases is that it would be patently unfair to hold a tenant in default when he has incurred an expense as the result of the landlord's failure to perform an express covenant. This reasoning was expressed in *Jack Spring v. Little*, 50 Ill. 2d 351, 280 N.E. 2d 208 (1972):

"It is established law that liability for rent continues so long as the tenant is in possession, and equally well established that a tenant may bring an action against his landlord for breach of a covenant or may recoup for damages in an action to recover rent. . . ."

". . . It would be paradoxical, indeed, to hold that if these were actions to recover sums owed for rent, the defendants would be permitted to prove that damages suffered as the result of the plaintiffs' breach of warranty equalled or exceeded the rent claimed to be due, and therefore, that no rent was owed, and at the same time hold that because the plaintiffs seek possession of the premises, to which, admittedly, they are not entitled unless rent is due and unpaid after demand, the plaintiffs are precluded from proving that because of the breach of warranty no rent is in fact owed. The argument that the landlord's claim is for rent and the tenants' for damages should not be permitted to obfuscate the sole and decisive issue, which simply stated is whether the tenants owe the landlord rent which is due and remains unpaid."

*See also Darnell v. Days*, 240 Iowa 665, 37 N.W. 2d 277 (1949).

Hence, it is clear in this case that lessees are entitled to a setoff of the costs incurred as a result of the lessor's failure to perform her express covenant to repaint. C.R.C.P. 13; *First National Bank v. Lewis*, 57 Colo. 124, 139 P. 1102 (1914) (decided under Code of Civil Procedure § 63).

The trial court made no findings of fact on the question of whether the expenses incurred by the defendants in repainting the penthouse were reasonable. It is therefore necessary for the trial court to hold a hearing to

make such a determination. *Johns v. Gibson*, 60 Ga. App. 585, 4 S.E. 2d 480 (1939); *Beardsley v. Morrison*, 18 Utah 478, 56 P. 303 (1897).

The judgment of the Court of Appeals is affirmed as to attorney fees and the judgment is otherwise reversed and the cause returned to the Court of Appeals with directions to remand to the trial court for further proceedings consonant with the views herein expressed.

MR. CHIEF JUSTICE PRINGLE does not participate.